IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:11cv219

| | |
|---|---|
| IRMA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | MEMORANDUM AND |
| ) | RECOMMENDATION |
| ) | |
| DAVID SABO, CYNTHIA ) | |
| BREYFOGLE, MARYANN CURL, ) | |
| CAROLE RIVERS, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

Pending before the Court is the Motion to Substitute Party [# 2] and the Motion to Dismiss [# 3] filed by the United States. Plaintiff brought this action against Defendants in the Superior Court of Buncombe County asserting claims for wrongful interference with prospective contract and unfair and deceptive trade practices under North Carolina law. Subsequently, the United States removed the action to this Court and moved to substitute the United States for the individual Defendants and to dismiss the Complaint. The Court **RECOMMENDS** that the District Court grant the Government's motions [# 2 & # 3].

I. **Background**

Plaintiff is a resident of Buncombe County, North Carolina and was appointed as a physician at the Charles George V.A. Medical Center (the "Medical Center") in Asheville, North Carolina in 2008. (Pl.'s Comp. at ¶¶ 1, 3.) This appointment was subject to a two year probationary period, which ended on September 29, 2010. (Id. at ¶¶ 3, 5.) Plaintiff served as a staff anesthesiologist during this period. (Id. at ¶ 4.)

On August 13, 2010, Plaintiff was reappointed on a full-time basis for the period from August 12, 2010, through August 11, 2012. (Id.) Defendant MaryAnn Curl, the chief of the medical staff, and Defendant Cynthia Breyfogle, the director of the Medical Center, signed Plaintiff's Reappointment of Privileges. (Id. at ¶¶ 4, 6.)

Three days later, a special Professional Standards Board meeting was held. (Id. at ¶ 8a.) Defendant Curl chaired the meeting. (Id. at ¶ 8c.) Plaintiff was not provided notice of this meeting or given an opportunity to attend. (Id.) At this meeting, Defendant David Sabo, the chief of anesthesiology and Plaintiff's supervisor, presented a number of alleged complaints from Medical Center employees to the Professional Standards Board. (Id. at ¶ 8b.) Plaintiff alleges that these complaints were either without merit or fabricated by Defendant Sabo. (Id.) Prior to the meeting, Plaintiff had never seen the complaints, and the remaining

Defendants had not investigated the alleged complaints. (Id.)

As a result of this meeting, the Professional Standards Board ordered the clinical proctoring of Plaintiff by Defendant Sabo. (Id. at ¶ 8c.) Several days later, another meeting was held during which someone requested that the proctoring of Plaintiff be conducted by another qualified physician rather than Defendant Sabo. (Id. at ¶ 8d.) Plaintiff attended this meeting. (Id.)

The next day, Defendant Sabo notified Plaintiff by email that he would begin proctoring her on August 26, 2010. (Id. at ¶ 8e.) Plaintiff's attorney responded to Defendant Sabo's email and stated that she objected to his involvement in proctoring her because: (1) she believed he was acting in retaliation for a complaint she made in March of 2010 regarding his alleged "unprofessional behavior towards her" and (2) that Defendant Sabo was not qualified to proctor Plaintiff in certain areas of anesthesiology because he was not himself certified in those areas. (Id. at ¶8f.)

On the morning of August 26, 2010, Defendant Sabo was in the operating room with Plaintiff. (Id. at ¶ 8g.) Although Plaintiff alleges that no proctoring occurred, Defendant Sabo later reported to Defendant Carole Rivers, the acting chief of the medical staff. (Id. at ¶¶ 6, 8g.) After consulting with Defendant Curl, Defendant Rivers suspended Plaintiff's medical privileges at the Medical Center.

(Id. at ¶ 8g.) Defendant Breyfogle informed Plaintiff in writing of her suspension, stating that her clinical practice and professional conduct did not meet the accepted standards of practice and constituted a potential eminent threat to the welfare of patients. (Id. at ¶ 8h.)

Defendant Curl then appointed a Summary Review Board. (Id. at ¶ 8i.) The Summary Review Board met on September 10, 2010, and reviewed the allegations against Plaintiff. (Id. at ¶ 8j.) These allegations constituted the same allegations made by Defendant Sabo before the Professional Standards Board. (Id.) Although Plaintiff was provided with a copy of the medical information of the alleged complaints, she was not allowed to cross examine any of the witnesses. (Id.) Later that day, the Summary Review Board entered an Action prepared and signed by Defendant Curl for herself and on behalf of Defendant Breyfogle finding that the charges of clinical incompetence were not substantiated, but that Plaintiff had been insubordinate for, among other things, refusing to meet with her supervisors on many occasions and refusing to submit to a proctoring. (Id. at ¶ 8k.) Accordingly, the Summary Review Board recommended that Plaintiff be terminated during her probationary period. (Id.) Subsequently, Defendant Curl, on behalf of Defendant Breyfogle, terminated Plaintiff's employment on September 24, 2010, five days before she was set to become a permanent employee. (Id.)

Defendant Curl also sent a report to the National Practitioners' Data Base stating that Plaintiff's clinical privileges had been revoked because of her disruptive conduct. (Id. at ¶ 8l.)

Several weeks later, Plaintiff appeared before the Appeals Board. (Id. at ¶ 8n.) The Appeals Board found that the charge of professional misconduct was unsubstantiated and that there was no evidence of professional misconduct. (Id.) In spite of the findings of the Appeals Board, Defendant Breyfogle refused to reinstate Plaintiff's employment. (Id. at ¶ 8o.) This action ensued.

**II.    Analysis**

When a plaintiff brings an action against federal employees, the Federal Employees Liability Reform and Tort Compensation Act of 1988, commonly referred to as the Westfall Act, empowers the Attorney General of the United States to certify that a defendant employee was acting withing the scope of his or her employment at the time of the incident giving rise to the claim, and the district court shall deem the action as one against the United States, rather than the individual federal employee. 28 U.S.C. § 2679(d)(1); see also Martinez v. Lamagno, 515 U.S. 417, 419-20, 115 S. Ct. 2227, 2229 (1995). The United States Attorneys are authorized to issue these certifications on behalf of the Attorney General. Martinez v. DEA, 111 F.3d 1148, 1152 (4th Cir. 1997). Upon

certification by the Attorney General or a United States Attorney, the United States is substituted as the party defendant and the individual employees are dismissed from the action. 28 U.S.C. § 2679(d)(1); Lamagno, 515 U.S. at 420, 115 S. Ct. at 2229.

Once the United States is substituted as the proper party, the case is then governed by the Federal Torts Claims Act. 28 U.S.C. § 2679(b)(1); Lamagno, 515 U.S. at 420, 115 S. Ct. at 2229. The Federal Torts Claims Act contains a number of exceptions that shield the United States from suit. See 28 U.S.C. § 2680; Lamagno, 515 U.S. at 420, 115 S. Ct. at 2229. One such exception is 28 U.S.C. § 2680(h), which provided that the United States shall not be liable for any claim arising out of the interference with contract rights. See Whedbee v. U.S., 352 F. Supp. 2d 618, 628 (M.D.N.C. 2005) ("A claim for tortious interference with contract is one of those claims that is specifically excluded by the FTCA as a claim that can be brought against the United States."); French v. U.S., 55 F. Supp. 2d 379, 381 (W.D.N.C. 1999) (Thornburg, J.) As a result, if the United States is substituted as the defendant to an action, but an exception such as Section 2680(h) applies, a plaintiff may be left without a tort claim against any party. See Lamagno, 515 U.S. at 420, 115 S. Ct. at 2229. "When the United States retains immunity from suit, certification disarms plaintiffs. They may not proceed against

the United States, nor may they pursue the employee shielded by the certification." Id. at 427, 115 S. Ct. at 2233.

Unless challenged by a plaintiff, the Attorney General's certification is conclusive evidence that the alleged tort occurred within the scope of a defendant's employment. Martinez, 11 F.3d at 1153. Where a plaintiff challenges the certification, the certification constitutes prima facie evidence, and the burden shifts "to the plaintiff to prove, by a preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment." Id.; see also Ross v. Bryan, 309 F.3d 830, 833 (4th Cir. 2002); Borneman v. U.S., 213 F.3d 819, 827 (4th Cir. 2000). To satisfy this burden, a plaintiff must come forward with either "specific evidence or the forecast of specific evidence that contradicts the Attorney General's certification decision. . . ." Martinez, 111 F.3d at 1155; Borneman, 213 F.3d at 827. Mere conclusory allegations and speculation will not satisfy a plaintiff's burden. Martinez, 111 F.3d at 1155. If the plaintiff fails to come forward with any evidence, the certification is conclusive. Id.

Where a plaintiff comes forward with sufficient evidence to satisfy his or her burden of proof, the burden shifts back to the Government, and the United States may come forward with evidence supporting its certification. Borneman, 213 F.3d at 827; Martinez, 111 F.3d at 1155. As the United States Court of Appeals for the

Fourth Circuit explained in Martinez,

> At this point, the district court may permit (and limit) any needed discovery. Thereafter, the district must determine whether there are any genuine issues of fact material to the scope-of-employment decision, and, if so, it may conduct an evidentiary hearing to resolve these factual issues. Once any factual issues are resolved, the district court should weigh the evidence on each side to determine whether the certification should stand.

Martinez, 111 F.3d at 1155. In making the determination as to whether the federal employee was acting within the scope of his or her employment, the Court applies the law of the state where the alleged tort occurred. Ross v. Bryan, 309 F.3d 830, 834 (4th Cir. 2002); Borneman, 213 F. 3d at 827.

The alleged torts in this case occurred in North Carolina. Under North Carolina law, a principal may be held liable for the acts of its agent when: (1) the principal expressly authorizes the act; (2) the principal subsequently ratifies the act; or (3) the agent's act is committed within the scope of his or her employment and in furtherance of the principal's business. Medlin v. Bass, 398 S.E.2d 460, 463 (N.C. 1990); Mercier v. Daniels, 533 S.E.2d 877, 880 (N.C. Ct. App. 2000). "To be within the scope of employment, an employee at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." Troxler v. Charter Mandala Ctr., Inc., 365 S.E.2d 665, 668 (N.C. Ct. App. 1988). "If the servant was engaged in

performing the duties of his employment at the time he did the wrongful act which caused the injury, the employer is not absolved from liability by reason of the fact that the employee was also motivated by malice or ill will toward the person injured, or even by the fact that the employer had expressly forbidden him to commit such act." Wegner v. Delly-Land Delicatessen, Inc., 153 S.E.2d 804, 807-8 (N.C. 1967). In contrast, a principal "is not liable if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do." Id. at 808; Hogan v. Forsyth Country Club Co., 340 S.E.2d 116, 122 (N.C. Ct. App. 1986). The scope of employment question is a factual inquiry. Borneman, 213 F.3d at 828 (applying North Carolina law); Lee v. U.S., 171 F. Supp. 2d 566, 574-75 (M.D.N.C. 2001).

The United States Attorney for Western District of North Carolina submitted a certification pursuant to 28 U.S.C. § 2679(d), certifying that Defendants were at all times acting within the course and scope of their employment with the United States Veterans Administration with respect to the events alleged in the Complaint. (Certification of Scope of Employment, Aug. 17, 2011.) In addition, the Government submitted the Declaration of Cynthia Breyfogle stating that Defendants were all employed by the United States Department of Veterans Affairs

during the relevant time period and were acting within the scope of their role as supervisors and management employees. (Breyfogle Aff. ¶¶ 2-4, Aug. 11, 2011.) This certification is prima facie evidence that Defendants were acting with the scope of their employment. Plaintiff, therefore, must demonstrate by a preponderance of the evidence that Defendants were acting outside the scope of their employment. Martinez, 11 F.3d at 1153.

Plaintiff did not come forward with any evidence that Defendants were acting outside the scope of their employment when they undertook the actions alleged in the Complaint. Instead, Plaintiff reasserted the factual allegations in the Complaint. The Complaint, however, contains no factual allegations that contradict the certification of the United States Attorney. If anything, the factual allegations in the Complaint support the position of the Government that the actions taken by Defendants that led to Plaintiff's termination were all taken within the scope of their employment as Plaintiff's supervisors, even if Defendants may have also been motivated by ill will towards Plaintiff. See Wegner, 153 S.E.2d at 807-8. Moreover, Plaintiff's conclusory statement that the actions were taken as part of a "personal vendetta" against her is insufficient satisfy her burden. See Martinez, 11 F.3d at 1153. Because Plaintiff has not come forward with "specific evidence or the forecast of specific evidence" contradicting the certification of the

United States Attorney, the certification is conclusive evidence that Defendants were acting within the scope of their employment. Id.; Borneman, 213 F.3d at 827. Accordingly, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Substitute Party [# 2] and Substitute the United States as the party defendant for the individual Defendants.

Finally, Plaintiff's claims for wrongful interference with prospective contract and unfair and deceptive trade practices both arise out of the alleged interference with her contractual rights and, therefore, cannot be brought against the United States. See 28 U.S.C. § 2680(h); Whedbee, 352 F. Supp. 2d at 628; French, 55 F. Supp. 2d at 381. This is one of the "unusual" cases that the United States Supreme Court acknowledged in Lamagno, where certification and substitution of the United States will disarm Plaintiff and leave her without a tort action against any party. See Lamagno, 515 U.S. at 427, 115 S. Ct. at 2233. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claims, and they are subject to dismissal. See Whedbee, 352 F. Supp. 2d at 628-29. The Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 3] after substituting the United States as the defendant in this action.

### III. Conclusion

The Court **RECOMMENDS** that the District Court **GRANT** the Motion to

Substitute Party [# 2], **SUBSTITUTE** the United States as the defendant in this action, and **DISMISS** the individual Defendants. In addition, the Court **RECOMMENDS** that the District Court **GRANT** the Motion to Dismiss [# 3] and **DISMISS** the action against the United States in its entirety.

Signed: March 5, 2012

*Dennis L. Howell*
Dennis L. Howell
United States Magistrate Judge

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(c), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).