IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION

CIVIL CASE NO. 1:11cv219

| | |
|---|---|
| IRMA WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **O R D E R** |
| ) | |
| DAVID SABO, CYNTHIA ) | |
| BREYFOGLE, MARYANN CURL, ) | |
| and CAROLE RIVERS, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** is before the Court on the Motion to Substitute the United States for the Individual Defendants [Doc. 2] and the Motion to Dismiss, both filed by the United States [Doc. 3].

Pursuant to 28 U.S.C. § 636(b) and the Standing Orders of Designation of this Court, United States Magistrate Judge Dennis L. Howell was designated to consider these motions and to submit recommendations for their disposition.

On March 5, 2012, the Magistrate Judge filed a Memorandum and Recommendation in which he recommended granting both motions. [Doc. 8].

The Plaintiff timely filed Objections to that recommendation on March 22, 2012. [Doc. 9].

## PROCEDURAL HISTORY & FACTUAL BACKGROUND

On August 29, 2011, the United States filed a Notice of Removal of this action from the Superior Court for Buncombe County. [Doc. 1]. In the Notice of Removal, jurisdiction is predicated on 28 U.S.C. §2679(d)(2) which provides that when the United States Attorney General certifies that a defendant in a civil action is an employee of the United States and was acting within the scope of employment at the time of the incident alleged in the complaint, any such civil action brought in a state court shall be removed to federal court. [Id.]. Attached to the Notice of Removal is such a certificate. [Doc. 1-3]. Because of that certification, the action "shall be deemed to be an action . . . brought against the United States . . . and the United States shall be substituted as the party defendant," 28 U.S.C. §2679(d)(2), and thus jurisdiction also lies under 28 U.S.C. §1442(a)(1) which governs actions against the United States.

In the Complaint, the Plaintiff alleges that on September 29, 2008 she was appointed, subject to a two-year probationary period, as a staff anesthesiologist at the Charles George V. A. Medical Center (the VA) in Asheville, North Carolina. [Doc. 1-1 at 1]. Near the conclusion of that

probationary period, the Plaintiff was reappointed for a term to end on August 11, 2012. [Id.]. The reappointment was signed by Defendants MaryAnn Curl (Curl), Chief of Medical Staff, and Cynthia Breyfogle (Breyfogle), Medical Director. [Id. at 1-2]. Based on this reappointment, the Plaintiff was to become a non-probationary employee as of September 29, 2010. [Id. at 2].

It is alleged that beginning on August 16, 2010, Curl and Breyfogle along with Defendant David Sabo (Sabo), Chief of Anesthesiology, "began a series of malicious actions wrongfully interfering with the Plaintiff's prospective contract with the V. A. Medical Center" which resulted in the termination of her contract on September 29, 2010, the same date she would have become a non-probationary employee. [Id. at 2]. According to the Complaint, the Defendants conducted a Professional Standards Board (PSB) meeting on August 16, 2010 without notice to the Plaintiff; thus, preventing her from having an opportunity to attend. [Id.]. During that meeting, complaints about the Plaintiff which had been made to the PSB by VA employees were presented. [Id.]. As of the time of the meeting, the Plaintiff had not been given copies of those complaints. [Id.]. At the meeting it was decided that an Order of proctoring of the Plaintiff should be entered. [Id. at 3]. This Order was contrary to VA policy. [Id.]. On August 24, 2010, the Plaintiff requested that any proctoring be conducted by a physician other than Sabo because he

3

lacked the necessary qualifications to assess her performance. [Id.]. Despite this request, the Plaintiff received notification from Sabo on August 25, 2010 that he would serve as the proctoring physician. [Id.]. During a procedure on August 26, 2010, Sabo was present in the operating room with the Plaintiff. [Id.]. After that procedure, Sabo made a report to Defendant Carole Rivers (Rivers), Acting Chief of Medical Staff, although the content of that report is not alleged. [Id.]. Rivers, in consultation with Curl, immediately thereafter suspended the Plaintiff's hospital privileges at the VA. [Id.]. Breyfogle wrote to the Plaintiff on August 26, 2010 advising her that she had been summarily suspended because her clinical practice and professional conduct did not meet the accepted standards of practice. [Id. at 4]. On August 30, 2010, Curl appointed a Summary Review Board (SRB) which contained some of the same members as those on the PSB. [Id.]. The SRB met on September 10, 2010 to review the complaints. Although the Plaintiff was present, she was not permitted to examine the witnesses. [Id.]. On that same day, the Board entered an Action, finding that the charges of clinical incompetence against the Plaintiff were not substantiated but finding that charges of insubordination were substantiated based on her refusal to meet with her supervisor, Sabo, and her refusal to undergo proctoring. [Id.]. The issuance of this Action resulted in a decision to terminate the Plaintiff. [Id.]. On September 24, 2010,

4

prior to providing the Plaintiff with notice of her right to appeal, Curl sent a report of Revocation of Clinical Privileges to the National Practitioner's Data Base. [Id. at 5]. The basis for the revocation was reported to be disruptive conduct. [Id.]. Three days after this report had been provided to the national database, Breyfogle provided the Plaintiff with notice of her right to appeal the Action. [Id.]. On November 15, 2010, the Plaintiff appeared before the Appeals Board which concluded that the charge of professional misconduct was unsubstantiated and that the Plaintiff had acted properly. [Id.]. Nonetheless, Breyfogle refused to reinstate the Plaintiff. [Id. at 6].

In the Complaint, the Plaintiff has alleged claims for wrongful interference with prospective contract and unfair and deceptive trade practices. [Id. at 6-7].

As noted above, the United States Attorney for the Western District of North Carolina certified that at all times alleged in the Complaint, each of the individual defendants was acting within the course and scope of his or her employment with the United States Veterans Administration.[1] [Doc. 1-3]. The United States then moved on August 29, 2011 to be substituted as the correct party defendant. [Doc. 2]. On the same day, it moved to dismiss the action.

---

[1] United States Attorneys are authorized by regulation to issue such certifications. Gutierrez de Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1152 (4th Cir.), cert. denied 522 U.S. 931, 118 S.Ct. 335, 139 L.Ed.2d 260 (1997).

[Doc. 3].

## STANDARD OF REVIEW

A district court reviews specific objections to a Memorandum and Recommendation under a *de novo* standard. 28 U.S.C. §636(b). "Parties filing objections must specifically identify those findings objected to." <u>Battle v. United States Parole Commission</u>, 834 F.2d 419, 421 (5th Cir.1987), <u>overruled on other grounds</u> <u>Douglass v. United Ervs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996). If a party makes only general objections, *de novo* review is not required. <u>Wells v. Shriners Hospital</u>, 109 F.3d 198, 200 (4th Cir. 1997)(boilerplate objections will not avoid the consequences of failing to object altogether). "Section 636(b)(1) does not countenance a form of generalized objection to cover all issues addressed by the magistrate judge; it contemplates that a party's objection to a magistrate judge's report be specific and particularized, as the statute directs the district court to review only *those portions* of the report or *specified* proposed findings or recommendations *to which objection is made*." <u>United States v. Midgette</u>, 478 F.3d 616, 621 (4th Cir.), <u>cert. denied</u> 551 U.S. 1157, 127 S.Ct. 3032, 168 L.Ed.2d 749 (2007) (emphasis in original).

**DISCUSSION**

It is undisputed that each of the individual defendants was employed at the relevant time by the Veterans Administration and thus was a federal employee. When a federal employee is sued, 26 U.S.C. §2679, commonly known as the Westfall Act, provides that the Attorney General has the authority to certify that such federal employee, at the time of the incident out of which the claim arises, was acting within the scope of his or her employment. When the Attorney General so certifies the action "shall be deemed to be an action ... brought against the United States ... and the United States shall be substituted as the party defendant." 28 U.S.C. §2679(d)(2) (emphasis provided). Thereafter, the individual federal employee named as a defendant is to be dismissed and the action may proceed, if at all, only as a suit against the United States. Gutierrez de Martinez v. Drug Enforcement Administration, 111 F.3d 1148, 1152 (4th Cir. 1997). The Attorney General has filed such a certification in this case. [Doc. 1-3].

The Westfall Act was initially interpreted such that the Attorney General's certificate was conclusive and unreviewable. Johnson v. Carter, 983 F.3d 1316 (4th Cir. 1993). This was overturned by the Supreme Court in Gutierrez de Martinez v. Lamagno, 515 U.S. 417, 115 S.Ct. 2227, 2237, 132 L.Ed. 2d 375 (1995). On remand in that case, the Fourth Circuit formulated

a procedure to be followed when a Westfall Certificate is filed. This procedure accounts for both the language of the statute and the constitutional due process considerations articulated by the Supreme Court.

> The Attorney General's certification is conclusive unless challenged. When the certification is challenged, it serves as *prima facie* evidence and shifts the burden to the plaintiff to prove, by the preponderance of the evidence, that the defendant federal employee was acting outside the scope of his employment.

Gutierrez de Martinez, 111 F.3d at 1153 (internal citations omitted). As the Court emphasized in a footnote, "the scope-of-employment certification places the burden of proof on the plaintiff, thereby *requiring the plaintiff to come forward with evidence* to prove that the defendant federal employee was acting outside the scope of his employment." Id. at 1154 n.5.

> It is for the district court to assess the sufficiency of the evidence produced by the plaintiffs. Only if the district court concludes that there is a genuine question of fact material to the scope-of-employment issue should the federal employee be burdened with discovery and an evidentiary hearing.

Id. at 1155. This procedure is necessary because the Westfall Act provides to the federal employee "an *immunity from suit* rather than a mere defense to liability." Gutierrez de Martinez, 111 F.3d at 1154 (quoting Mitchell v. Forsyth, 472 U.S. 511, 526, 105 S. Ct. 2806, 86 L.Ed.2d 411 (1985)) (emphasis in original). The result is a procedure that is something of a hybrid of the approach found in Rule 56 with regard to summary judgment. The plaintiff as

8

the non-moving party is required to present a sufficient forecast of evidence in order to avoid the dismissal of his case. In this context, however, he is required to present such evidence even to have the opportunity to conduct discovery. This is in contrast to the summary judgment context where the plaintiff is not called upon to present a forecast of evidence until after he has had a full opportunity for discovery. Just as with summary judgment, however, the plaintiff cannot simply rest on the allegations of his complaint. See, Fed. R. Civ. P. 56(c).

Plaintiff's counsel apparently misapprehends this procedural paradigm. Plaintiff's first objection to the Memorandum and Recommendation[2] is that the Magistrate Judge recommended that the Court accept the certification of the Attorney General even though it was made by the United States Attorney having done "nothing more than read the Complaint and confirm that Defendants were employed by the United States Veterans Administration." Plaintiff argues that "conclusory allegations and speculation do not satisfy

---

[2] Plaintiff did not specifically identify the particular legal conclusions or recommended factual findings to which she objects. She "requests a *de novo* determination of Defendants' Motions to Substitute the United States and Motion to Dismiss," [Doc. 9 at 1], but then simply presents a "Factual Background" followed by "Argument." The Court has ferreted out from the various arguments set forth in the text of Plaintiff's brief the items to which she appears to object. That argument only mentions the Memorandum and Recommendation three times (one of those to concede that it correctly states the law). [Id. at 13]. The only portion of the Memorandum and Recommendation which Plaintiff expressly argues to be incorrect is its recommendation that the Court rely on the Attorney General's certification.

9

Plaintiff's burden when contradicting the United States Attorney's certification, and neither should the Court allow the United States to get by with the same thing." [Doc. 9 at 13]. By enacting the Westfall Act, however, Congress created "an evidential presumption" which "declares that certain conduct shall suffice as evidence until the opponent produces contrary evidence." Black's Law Dictionary 579 (7th ed.1999) (internal quotation and citation omitted). In other words, there is no requirement that the Attorney General come forward with evidence in support of the certification unless and until the Plaintiff rebuts this "evidential presumption." Id.; Virginia v. Black, 538 U.S. 343, 369, 123 S.Ct. 1536, 155 L.Ed.2d 535 (2003) (Scalia, J., concurring in part, dissenting in part); Wuterich v. Murtha, 562 F.3d 375, 380-81 (D.C. Cir. 2009); Gutierrez de Martinez, 111 F.3d at 1159 ("In conclusion, we hold that a scope-of-employment certification produced under the Westfall Act is *prima facie* evidence that the defendant federal employee acted within the scope of his employment, and that it places the burden on the plaintiff to prove otherwise."). The Plaintiff's Objection to the certification as *prima facie* evidence is therefore rejected.

Plaintiff next argues that her showing is sufficient to rebut the Attorney

General's certification,[3] quoting from Gutierrez de Martinez that "plaintiff's submission must be specific evidence **or** the forecast of specific evidence that contradicts the Attorney General's certification decision." [Doc. 9 at 9 (emphasis added in Plaintiff's filing)] (quoting Gutierrez de Martinez, 111 F.2d at 1155). Gutierrez de Martinez stands for the proposition that a plaintiff may seek to attack the Attorney General's certification in either of two ways. The plaintiff may submit evidence that refutes the facts set out in the certification and allow the Court to make a factual determination as to the correctness of the certification, or the plaintiff may present a forecast of evidence demonstrating that material portions of the certification are sufficiently in question that the plaintiff should be allowed to develop the issue with discovery, with an evidentiary hearing to follow. Id. The key, however, is that both options require the Plaintiff to present *evidence*. Plaintiff herein has presented no evidence. She has presented only unsworn allegations in her Complaint. In objecting to the Memorandum and Recommendation the Plaintiff cites only to those unsworn allegations in her attempt to rebut the certification.

Even if the Plaintiff had verified her Complaint or presented it under

---

[3] Plaintiff does not specify to which portion of the Memorandum and Recommendation this argument is directed.

11

penalty of perjury, however, the Plaintiff would have fared no better. In considering whether the Plaintiff made a specific forecast of evidence on this point, the Court must apply the law of the state where the conduct occurred; in this case North Carolina. Borneman v. United States, 213 F.3d 819, 827 (4th Cir.), cert. denied 531 U.S. 1070, 121 S.Ct. 759, 148 L.Ed.2d 661 (2001); Martinez, 111 F.3d at 1156.

In North Carolina, "[t]o be within the scope of employment, an employee, at the time of the incident, must be acting in furtherance of the principal's business and for the purpose of accomplishing the duties of his employment." Mercier v. Daniels, 139 N.C. App. 588, 592, 533 S.E.2d 877 (2000) (quoting Troxler v. Charter Mandala Center, 89 N.C. App. 268, 271, 365 S.E.2d 665, review denied 322 N.C. 838, 371 S.E.2d 284 (1988)). An employer, however, is not liable "if the employee departed, however briefly, from his duties in order to accomplish a purpose of his own, which purpose was not incidental to the work he was employed to do." Id. (quoting Wegner v. Delly-Land Delicatessen, 270 N.C. 62, 66-67, 153 S.E.2d 804, 808 (1967)).

> In sum, under North Carolina law, [w]hen ... the employee is undertaking to do that which he was employed to do and, in so doing, adopts a method which constitutes a tort and inflicts injury on another it is the fact that he was about his master's business which [would] impose[ ] liability [on the employer].

Lee v. United States, 171 F.Supp.2d 566, 574 (M.D.N.C. 2001) (internal

quotation and citation omitted).

The Plaintiff here claims that the Defendants acted intentionally and with a personal animosity towards her thus making their conduct fall outside the scope of employment. As examples, the Plaintiff claims that Sabo solicited some complaints and fabricated others in retaliation for her earlier complaint against him for unprofessional conduct. [Doc. 1-1 at 2]. Curl, Rivers and Breyfogle are claimed to have failed to make any investigation of the accuracy of these complaints. [Id.]. Sabo is alleged to have assigned himself to act as the Plaintiff's proctor despite his animosity towards her and his lack of qualifications to serve in that capacity. [Id. at 3]. Curl and Rivers are claimed to have suspended the Plaintiff without any investigation and without a meeting of the PSB. [Id.]. It is also alleged that the handling of her suspension and termination was against normal procedures and the revocation of her privileges was in violation of VA policy. [Id. at 3-4]. Lastly, it is claimed that, despite acknowledging that the reasons given for the Plaintiff's termination were unsubstantiated, she was not reinstated. [Id. at 5-6].

However, "unsubstantiated speculation about the ill will of [her] colleagues ... is not enough, in and of itself, to transform acts which are facially within the scope of employment into acts that fall outside of that

13

scope." Maron v. United States, 126 F.3d 317, 327 (4th Cir. 1997). Each of the actions allegedly taken, however, were performed by the Defendants in the context of their supervisory positions on the employer's premises and during working hours. Id. Each allegation in the Complaint relates to the escalation of *work-related* disputes or events. Id.; Dolan v. United States, 514 F.3d 587, 593 (6th Cir.), cert. denied 554 U.S. 919, 128 S.Ct. 2971, 171 L.Ed.2d 888 (2008). This culminated in the Plaitniff's dismissal for what the Defendants determined to be insubordination and a refusal to meet with her supervisor. [Doc. 1-1 at 4]. Plaintiff was a probationary employee. As her superiors, the Defendants had the authority to make such an assessment and to terminate her employment. Their actions in doing so, therefore, was within the scope of their employment. This Court does not and cannot "sit as a super-personnel department to review the wisdom or fairness of" an employer's employment decisions. Lors v. Dean, 595 F.3d 831, 835 (8th Cir. 2010) (internal quotations and citations omitted).

Moreover, in North Carolina, an employer may ratify the conduct of its employee. Whedbee v. United States, 352 F.Supp.2d 618, 625 (M.D.N.C. 2005). Defendant Cynthia Breyfogle was the Medical Director of the VA facility. In her affidavit attached to the Notice of Removal, she expressly states that all the actions of which the Plaintiff complains were in the course

14

and scope of the Defendant's employment. [Doc. 1-2].

> [A] conclusion on the issue of scope of employment is also supported by the purported ratification of [the individual Defendants'] actions by [their] employer, as shown by an affidavit from [their superior]. This affidavit has established that [the superior] believes, based on the facts as alleged in the Complaint, that [each individual Defendant] was acting within the scope of his [or her] employment ..., at the time of the conduct about which Plaintiff complains. As a consequence of [these] statements, [the individual Defendants'] actions unquestionably have been ratified by [their] employer.

Lee, 171 F.Supp.2d at 577 (citations omitted).

"It is axiomatic that a party cannot interfere with his own contract. Rather, a tortious interference claim requires the existence of three actors – the two parties to the contract and a third-party who interferes with, or induces one of the parties to breach, that contract." Storey v. Patient First Corp., 207 F. Supp. 2d 431, 448 (E.D. Va. 2002). A non-human entity can act only through its employees and agents. Cedric Kushner Promotions, Ltd. v. King, 533 U.S. 158, 165-66, 121 S.Ct. 2087, 150 L.Ed.2d 198, 206 (2001); Griffith v. Glen Wood Co., Inc., 184 N.C. App. 206, 213, 646 S.E.2d 550, 556 (2007). In determining the Plaintiff was insubordinate and in dismissing her from employment the actions of the Defendants *were* the actions of the VA. Therefore, the Defendants in this case cannot have tortiously interfered with Plaintiff's contract of employment. It would be absurd if the Defendants could not be responsible for tortious interference with a contract of employment for

a term, but they could be responsible for tortiously interfering with the Plaintiff's *expectancy* that she would, in the future, have a contract for a term. That, however, is exactly the claim the Plaintiff attempts to bring herein.

The Plaintiff also asserts a claim for unfair and deceptive trade practices. It, however, is derivative of the tortious interference claim. <u>Barry v. U.S. S.E.C.</u>, 2012 WL 760456 (E.D.N.Y. 2012) (citing <u>Lambertson v. United States</u>, 528 F.2d 441, 443 (2nd Cir.), <u>cert. denied</u> 426 U.S. 921, 96 S.Ct. 2627, 49 L.Ed.2d 374 (1976)). This claim seeks to establish liability for the same conduct and injury and therefore is a parallel claim arising from the first. <u>Id</u>. The United States is therefore also shielded against the unfair and deceptive trade practices claim. <u>Id</u>.

For these reasons the Court accepts the recommendation of the Magistrate Judge and concludes that the Attorney General's certification is unrebutted and finds that the Defendants acted within the course and scope of their authority and employment in terminating the Plaintiff's employment. Based thereon the Court accepts the conclusion of the Magistrate Judge that the Motion of the United States to be substituted as the party defendant should be granted. The Court further concludes that this Court lacks subject matter jurisdiction in this matter, and it should, therefore, be dismissed with prejudice.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Motion to Substitute the United States for the Individual Defendants [Doc. 2] is hereby **GRANTED**.

**IT IS FURTHER ORDERED** that the Motion to Dismiss, filed by the United States [Doc. 3] is hereby **GRANTED** and this action is hereby **DISMISSED**.

Signed: April 25, 2012

Martin Reidinger
United States District Judge